IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| DANIEL E., JR., | * |
| Plaintiff, | * |
| v. | * Civil No. TMD 18-3098 |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | * |
| Defendant.[1] | * |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
<u>ALTERNATIVE MOTION FOR REMAND</u>**

Plaintiff Daniel E., Jr., seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF Nos. 14, 15), Defendant's Motion for Summary Judgment (ECF No. 16), and Plaintiff's "Reply Memorandum in Support of Summary Judgment" (ECF No. 17).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**.

**I**

**Background**

On January 8, 2018, Administrative Law Judge ("ALJ") Bonnie Hannan held a hearing where Plaintiff and a vocational expert ("VE") testified. R. at 43-66. The ALJ thereafter found on May 23, 2018, that Plaintiff was not disabled from his alleged onset date of disability of May 31, 2014, through the date of the ALJ's decision. R. at 7-26. In so finding, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since May 31, 2014, and that he had the severe impairments of dysfunction of major joints, a spine disorder, sleep apnea, fibromyalgia, and hypertension. R. at 12-14. He did not, however, have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 14-15.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except with the following limitations: he can sit and stand for three hours and walk for two hours in an 8 hour workday. [Plaintiff] can occasionally operate foot controls bilaterally and frequently handle, finger, and feel bilaterally. He can occasionally reach overhead bilaterally, occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He can frequently balance and occasionally stoop, kneel, crouch, and crawl. [Plaintiff] can never work at unprotected heights or around moving mechanical parts. He can have occasional exposure to vibration and moderate noise, and [he] must avoid walking on uneven surfaces. [Plaintiff] needs access to restroom facilities but time off task can be accommodated by normal breaks.

R. at 15.[3]  In light of this RFC and the VE's testimony, the ALJ found that, although he could not perform his past relevant work as a dietary technician, Plaintiff could perform other work in the national economy as a router, non-postal mail carrier, or office helper.  R. at 19-21.  The ALJ thus found that Plaintiff was not disabled from May 31, 2014, through May 23, 2018.  R. at 21.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on October 9, 2018, a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case then was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

3

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled,

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1522(b)(1)-(6), 416.922(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v.*

*Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Among Plaintiff's arguments is his contention that the ALJ erred in evaluating his complaints of pain and fatigue from fibromyalgia. Pl.'s Mem. Supp. Mot. Summ. J. 12-16, ECF No. 15. Plaintiff contends that, in assessing his RFC, the ALJ erred in applying Social Security Ruling[5] ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012), which provides guidance on how the Commissioner develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and how the Commissioner evaluates fibromyalgia in disability claims. Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2. It is

> a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake,

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

> although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch.

*Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996) (citations omitted); *see Lillard v. Comm'r, Soc. Sec.*, No. JKB-13-1458, 2014 WL 2004710, at *2 n.1 (D. Md. May 14, 2014) (noting that criteria under SSR 12-2p "generally require that the claimant demonstrate: (1) a history of widespread pain; (2) tender points or other manifestations of fibromyalgia symptoms; and (3) evidence that other disorders, which could cause the symptoms have been ruled out").

Under SSR 12-2p, the ALJ "will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3104869, at *6. At steps four and five of the sequential evaluation process, the ALJ will consider the claimant's symptoms, such as widespread pain and fatigue, in determining whether exertional limitations or non-exertional limitations, including environmental restrictions, are warranted. *Id.*

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. at 16. The ALJ found:

> As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the evidence does not support that level of limitation. With regard to activities of daily living, [Plaintiff] testified he drives, takes his children to school by walking or driving, helps gets his kids get ready for school, shops, prepares snacks, and sometimes helps with homework. He also reported he attends to his personal care needs, prepares meals, cleans, does laundry, irons, walks, drives, rides a bike, shops, pays bills, counts change, handles a savings account, uses a checkbook, and reads magazines. These activities are inconsistent with the reports of needing to lie down a lot.

R. at 16 (citation omitted).

"An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [he] can perform them," however. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Plaintiff reported that he took frequent breaks while cleaning and caring for his children because of his pain. R. at 236. When he cooked, he did not bend or stoop to get pots and pans because of pain, and he did not stand for longer than fifteen minutes. R. at 237. Plaintiff also did laundry but only twice a week for thirty to forty minutes. R. at 237. He shopped for groceries three times per month for fifteen to forty-five minutes at a time. R. at 238. Plaintiff also had less interest in reading magazines because of his pain. R. at 239. He also reported that he sometimes did not attend social activities with his family because of his pain. R. at 240. The ALJ "did not acknowledge the limited extent of those activities as described by [Plaintiff] or explain how those activities showed that he could sustain a full-time job." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017).

Plaintiff's wife also completed a third-party function report. R. at 217-29. The ALJ found that

> [t]he record additionally contains a report from [Plaintiff's wife], which is generally supportive of [Plaintiff's] allegations. This report does not establish that [Plaintiff] is disabled. Since she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the information provided is questionable. Moreover, by virtue of the relationship with [Plaintiff], she cannot be considered a disinterested third party witness whose statements would not tend to be colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [Plaintiff] alleges. Most importantly, significant weight cannot be given to the third party report because it, like [Plaintiff's] allegations, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

R. at 19.

However, "if family members' evidence *was* automatically worthless, it would be an odd exercise in futility to even allow them to fill out questionnaires and submit them into evidence." *Morgan v. Barnhart*, 142 F. App'x 716, 731 (4th Cir. 2005) (Gregory, J., concurring in part and dissenting in part). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). The personal relationship of a lay witness with the claimant "is not a valid reason to discount his observations. To do so 'contradicts our insistence that, regardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition.'" *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)). "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value . . . ." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). The close relationship of the third-party witnesses in this case thus is not a germane reason to discount the weight of their observations. *See Diedrich*, 874 F.3d at 640.

A lack of support from the overall medical evidence is also not a proper basis for disregarding the observations of these witnesses. *Id.* "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Id.* (citing *Smolen*, 80 F.3d at 1289). Thus, "[a] lack of support from medical records is not a germane reason to give 'little weight' to those

observations." *Id.* On remand, the ALJ should provide reasons germane to the witness for disregarding her testimony.

Further, the VE testified that an individual who would be off task more than 15% of a workday would not be able to maintain work. R. at 65-66. An individual absent from work at least two day per month would also not be able to maintain work. R. at 65-66. "But the ALJ failed to incorporate this opinion anywhere in the RFC, leaving the RFC altogether uninformed by considerations of off-task time or unplanned leave." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Because the ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016).

In short, the ALJ "must *both* identify evidence that supports [her] conclusion *and* 'build an accurate and logical bridge from [that] evidence to [her] conclusion.'" *Woods*, 888 F.3d at 694 (second alteration in original) (quoting *Monroe*, 826 F.3d at 189). An ALJ's failure to do so constitutes reversible error. *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). For the reasons stated above, the Court remands this case for further proceedings. Because the Court remands on other grounds, it does not address Plaintiff's remaining arguments. *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 n.1 (4th Cir. 2012) ("Because we conclude that the ALJ committed legal error by failing to consider properly all the record evidence, an assessment of the weight of the evidence must be left to the ALJ on remand in the first instance."); *Travis X. C. v. Saul*, No. GJH-18-1210, 2019 WL 4597897, at *5 n.5 (D. Md. Sept. 20, 2019) ("[B]ecause the Court is remanding this case based on an insufficient RFC assessment, which occurs between steps three and four of the disability determination, it need not reach any issues related to step five."). In any event, the ALJ also should address these other deficiencies identified by Plaintiff. *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 98 n.* (4th Cir.

11

2015) (per curiam) ("The Social Security Administration's Hearings, Appeals, and Litigation Law Manual 'HALLEX' notes that the Appeals Council will vacate the entire prior decision of an administrative law judge upon a court remand, and that the ALJ must consider de novo all pertinent issues."); *Travis X. C.*, 2019 WL 4597897, at *5 n.5 ("In the interest of a comprehensive review on remand, however, the Court will note that the ALJ does need to explain which evidence he chooses to credit and which evidence he chooses to discredit and why." (citing *Monroe*, 826 F.3d at 189)).

## V

## **Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 16) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**. Defendant's final decision is **REVERSED** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order will issue.

Date: April 6, 2020

/s/
Thomas M. DiGirolamo
United States Magistrate Judge